NOTE:   This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3031

DONALD R. LEWIS,

Petitioner,

v.

DEPARTMENT OF AGRICULTURE,

Respondent.

Donald R. Lewis, of Kirbyville, Texas, pro se.

Anuj Vohra, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent.  With him on the brief were Jeanne E. Davidson, Director, and Donald E. Kinner, Assistant Director.

Appealed from:  Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3031

DONALD R. LEWIS,

Petitioner,

v.

DEPARTMENT OF AGRICULTURE,

Respondent.

Petition for review of the Merit Systems Protection Board in DA0752060686-I-1.

_____

DECIDED: March 7, 2008

_____

Before BRYSON, <u>Circuit Judge</u>, CLEVENGER, <u>Senior Circuit Judge</u>, and DYK, <u>Circuit Judge</u>.

PER CURIAM.

After the Department of Agriculture removed appellant Donald R. Lewis from his position, Mr. Lewis appealed the agency's decision to the Merit Systems Protection Board. The Board sustained each of the six charges against him and upheld his removal. We <u>affirm</u>.

Mr. Lewis was employed by the National Finance Center ("NFC") of the Department of Agriculture as the program manager for the agency's Equal Employment Opportunity and Workforce Services Staff. His duties encompassed a number of matters related to the resolution of discrimination complaints. On March 28, 2006, the agency sent Mr. Lewis a notice of proposed removal in which it listed seven charges against him: (1) receipt of government funds without securing required management approval; (2) failure to take appropriate management action; (3) allowing subordinate employees to conduct private business for personal gain using government time and equipment; (4) directing subordinate employees to perform personal work or errands for him on government time and equipment; (5) taking retaliatory action against subordinate employees following their making protected disclosures during an official investigation; (6) inappropriate management and personal conduct; and (7) making false statements during an official investigation.

After Mr. Lewis responded to the notice, the NFC Director removed Mr. Lewis from his position, sustaining all of the charges except the retaliatory action charge. Mr. Lewis appealed his removal to the Merit Systems Protection Board, challenging both the findings of misconduct and the penalty. He also raised an affirmative defense based on alleged deficiencies in the agency's investigation of his misconduct. The Board sustained the charges and the penalty, and it rejected Mr. Lewis's affirmative defense. In his petition for review, Mr. Lewis asserts that the Board erred in (1) affirming the charges against him, (2) finding that he had not established an affirmative defense

based on harmful error in the application of the agency's procedures, and (3) finding that his removal was a penalty in the range of reasonableness.

II

As an initial matter, Mr. Lewis asks us to reverse the Board's decision based on what he sees as a concerted effort among a number of NFC employees to effect his removal. Mr. Lewis asserts that the investigation into his alleged misconduct was initiated and orchestrated by an employee who hoped to get a promotion and another employee whose position was eliminated because of a reduction in force in July 2005. Mr. Lewis argues that the Board failed to follow its decision in Seavello v. Department of Navy, 4 M.S.P.B. 239, 241 (1980), a case in which the Board reversed an agency's demotion of an employee after finding "the case against the appellant irrevocably tainted by personal animus and testimony lacking in credibility." We will address Mr. Lewis's concerns related to bias against him as those concerns affect the Board's conclusion with respect to each charge. As Mr. Lewis challenges the Board's decision on each of the charges against him, we address each charge in turn.

A

In its first charge, the agency alleged that Mr. Lewis received government funds without management approval. That allegation was based on agency records showing that Mr. Lewis received lump-sum payments for unused compensatory time without obtaining supervisory approval. The agency's policy regarding compensatory time requires all compensatory time to be liquidated by the end of the leave year. Employees who do not use their compensatory time by that deadline forfeit their right to use their compensatory time and to receive overtime pay, unless an employee can

establish that he or she was unable to use compensatory time "due to an exigency of the service beyond the employee's control." For employees to receive overtime pay for unused time, they must obtain supervisory approval, which requires timekeepers to submit a specific form to the human resources staff before the deadline (i.e., the end of the leave year). Mr. Lewis received seven payments for compensatory time, and the agency had no record that the proper form for supervisory approval was submitted.

Mr. Lewis testified that he was unaware that the timekeeper who processed his payments did not follow the proper procedure and that he was unaware that supervisory approval had not been obtained. Based on Mr. Lewis's supervisory position, the Board found that Mr. Lewis should have been aware of the proper procedures for receiving payment for unused compensatory time. From that finding, the Board concluded that he knew or should have known that he received his overtime payments in violation of agency procedure. That conclusion, however, does not necessarily follow. Mr. Lewis may have been aware of the proper procedures, yet he may not have known that his timekeeper had not obtained supervisory approval. In any event, the Board found that the agency's charge against him did not require a finding of intent, and it was undisputed that the proper procedure was not followed. We agree with the Board that the charge does not specify an element of intent, and we therefore affirm the Board's determination with respect to that charge.

B

The agency's second charge was based on Mr. Lewis's failure to take appropriate management action when two of his subordinate employees complained of sexual harassment by a contract employee. The agency's first specification in support

of that charge stated that Ms. Adimu Kushindana complained to Mr. Lewis several times about the contract employee's behavior, only to have Mr. Lewis laugh in response. The second specification stated that Ms. Julie Nguyen first began having problems with the contract employee on February 9, 2005. The notice specified that Ms. Nguyen complained to Mr. Lewis but that Mr. Lewis responded by either laughing or ignoring her.

Before the administrative judge, both Ms. Nguyen and Ms. Kushindana testified that they approached Mr. Lewis about the contract employee's conduct on February 9, but that Mr. Lewis did not take any action until February 17. Mr. Lewis, however, testified that the first time he learned of the contract employee's conduct was on February 17, and he stated that he contacted the contract employee's supervisor, Ms. Debra Byrne, that same day. The administrative judge, however, found Mr. Lewis's testimony to lack credibility and concluded that Mr. Lewis likely learned of the contract employee's conduct earlier than February 17. The administrative judge did not find that Mr. Lewis had laughed about the allegations of the contract employee's conduct, but did find that, having learned of the allegations prior to February 17, Mr. Lewis should have taken some action prior to that date and failed to do so.

On appeal, Mr. Lewis challenges the administrative judge's credibility determination. He argues that the administrative judge failed to explain why she chose not to credit Mr. Lewis's testimony, but instead only stated that his "general demeanor while testifying, i.e., his carriage, behavior, manner, and appearance, demonstrated a lack of candor." Mr. Lewis also asserts that several of the employees who testified against him on this charge were upset about a July 2005 reduction in force in the

agency. Ms. Nguyen was the employee whose position was eliminated, and Mr. Lewis asserts that several of her former co-workers, including Ms. Kushindana, were upset about Mr. Lewis's decision to eliminate her position.

The administrative judge acknowledged that the reduction in force "may very well have caused some witnesses to now have a bias against the appellant." In light of that possibility, the administrative judge explained that she relied "to a large extent" on the testimony and affidavit of Ms. Byrne in sustaining this charge. Ms. Byrne's affidavit stated that she learned of the contract employee's conduct from another employee to whom Ms. Nguyen and Ms. Kushindana had complained. According to Ms. Byrne, that employee stated that Ms. Nguyen "had been trying to handle [the situation] internally with her supervisor but that the situation was persisting." Ms. Byrne's affidavit also stated that, when she contacted Mr. Lewis, she "was told that Ms. Nguyen had complained to him about the situation but he had not taken her complaint seriously." Based on Ms. Byrne's affidavit, we find the Board's conclusion that Mr. Lewis knew of the contract employee's conduct before February 17 to be supported by substantial evidence. We therefore affirm the Board's holding with respect to the second charge.

C

The agency's third charge was "Allowing Subordinate Employees to Conduct Private Business for Personal Gain on Government Equipment and Time." The agency based that charge on the activities of two of Mr. Lewis's employees. The first employee, Ms. Myloc Nguyen, used NFC equipment during government time for a restaurant, convenience store, and other businesses that she operated. The second employee, Ms. Kushindana, performed work as a travel agent during work hours. The

administrative judge found that Mr. Lewis knew of the activities of Ms. Kushindana. As for Ms. Nguyen, the administrative judge found that Mr. Lewis had sufficient knowledge of possible wrongdoing on her part that he should have taken action and failed to do so.

With respect to Ms. Kushindana's activities, it was undisputed that Ms. Kushindana performed work as a travel agent on government time. Ms. Kushindana testified that Mr. Lewis asked her for information on a trip to Disney World during work and that she provided him with rates. In his testimony, Mr. Lewis did not directly refute that assertion, but rather stated that Ms. Kushindana never planned a trip for him. The administrative judge explicitly credited Ms. Kushindana's testimony over Mr. Lewis's testimony.

Mr. Lewis again contends that Ms. Kushindana testified against him out of personal animus. Mr. Lewis's claim of bias was before the administrative judge, however, and the administrative judge was entitled to weigh the evidence in light of that asserted bias.

With respect to Ms. Nguyen's activities, Mr. Lewis argues that the Board's finding that he failed to take appropriate action to curtail her business-related activities in the office is erroneous. Specifically, Mr. Lewis points to an affidavit from Ms. Nguyen stating that she made efforts to conceal her business-related activities from Mr. Lewis and others close to him. Mr. Lewis also asserts that after he learned of Ms. Nguyen's activities from his discussion with Ms. Kushindana, which he states took place in June or July 2005, he began monitoring Ms. Nguyen more closely. He contends that the Board erred in finding that Ms. Nguyen's activities continued through August 2005 because she went on a 30-day vacation and did not return until November 2005 on

account of Hurricane Katrina. Mr. Lewis states that when she returned, he moved her office closer to his so that he could observe her more closely and that he also established a time log to track how official time was used.

Although Mr. Lewis asserts that he took action after Ms. Kushindana brought Ms. Nguyen's activities to his attention, the administrative judge found that he was likely on notice of possible wrongdoing by Ms. Nguyen from an earlier date. The administrative judge found it to be improbable that Mr. Lewis was unaware of Ms. Nguyen's activities, as it was common knowledge that Ms. Nguyen performed work for her businesses at the NFC office on government time. Mr. Lewis's reliance on Ms. Nguyen's affidavit does not persuade us that the administrative judge erred, because the record shows that her activities were well known throughout the office. Several employees testified that documents relating to Ms. Nguyen's personal businesses were frequently found in the office fax machine, and Mr. Lewis acknowledged that on at least one occasion he picked up one of Ms. Nguyen's faxes and delivered it to her. Because the administrative judge was entitled to credit the agency's evidence over Mr. Lewis's, we affirm the Board's ruling with respect to the third charge.

D

Mr. Lewis next challenges the Board's determination with respect to the fourth charge, that he directed his subordinate employees to perform personal work for him on government time and equipment. The specification that was sustained by the deciding official alleged that Mr. Lewis directed a number of employees to prepare various personal documents such as personal letters, letters to banks, and bills of sale for real

estate. Mr. Lewis was also charged with directing a student employee to write a research paper for Mr. Lewis's son.

In sustaining the fourth charge, the administrative judge found unconvincing Mr. Lewis's assertion that he merely asked his employees to perform his personal work for him but that he never directed them to do so, and his contention that none of his employees ever objected to performing the work. The administrative judge also found that because of Mr. Lewis's supervisory position, the student employees that he directed to perform his personal work, including the student employee who wrote a research paper for his son, would have been highly unlikely to object to his requests.

Mr. Lewis argues that the Board erred in finding that he directed employees to perform his personal work. He states that none of the employees who testified or provided statements stated that they were actually ordered to perform personal work for Mr. Lewis. We find, however, that it was reasonable for the Board to infer that when Mr. Lewis asked his subordinate employees to perform personal work for him, the request was equivalent to an order based on the relationship between Mr. Lewis and the employees. The Board's finding on the fourth charge was therefore supported by substantial evidence.

E

The Board next addressed the charge in the notice of proposed removal that alleged that Mr. Lewis engaged in inappropriate management and personal conduct. That charge was supported by four specifications, all of which were sustained by the Board. The specifications alleged that Mr. Lewis (1) made inappropriate comments to his subordinates regarding religion, sexual orientation, and employees' weight, (2)

pounded his fist loudly on his desk and on other employees' desks, (3) harshly criticized employees, causing them to cry, and (4) on January 15, 2005, grabbed Julie Nguyen's arm so hard that it left a bruise.

Relying on the Board's decision in Mason v. Department of Navy, 70 M.S.P.R. 584, 586-89 (1996), Mr. Lewis argues that the first three allegations were too vague to provide proper notice to him because they did not specify the dates or locations of the alleged conduct. In Mason, the Board reversed an agency action based on an employee's alleged use of racial slurs because the agency's proposed notice of removal "did not give any indication of when or where this misconduct allegedly occurred." Id. at 587. In this case, Mr. Lewis submitted an interrogatory requesting specific details with respect to the alleged offensive comments and conduct, but the agency provided none.

Mr. Lewis contends that because of the lack of specificity in the first three specifications, he was denied a fair opportunity to respond to those charges. It was inherent in the nature of the charges in those specifications, however, that great specificity was not possible. Three of the four specifications alleged a pattern of conduct over time, rather than a particular incident. And the individual instances of inappropriate conduct, such as angry remarks or insulting words, were not the type as to which witnesses would ordinarily be expected to recall the precise date and surrounding circumstances. Nonetheless, while the agency was not able to provide the particular date and location for each incident of allegedly inappropriate conduct, the agency provided, with regard to each specification, the names of those employees who had complained about Mr. Lewis's conduct and the particular nature of his conduct. Moreover, a number of the witnesses prepared affidavits containing details regarding

Mr. Lewis's inappropriate conduct, and he had copies of those affidavits prior to the hearing before the agency and before the administrative judge. Under these circumstances, we are satisfied that the agency's failure to provide additional details about the alleged misconduct did not constitute an unfair failure to provide discovery.

With respect to the first specification, the Board sustained the charge that on multiple occasions Mr. Lewis had used inappropriate language and made offensive comments in front of subordinates. While Mr. Lewis challenges this finding and at the hearing denied making such comments, the administrative judge made a credibility determination with respect to the conflicting evidence on this point, and such credibility determinations are virtually unreviewable. See Chambers v. Dep't of the Interior, No. 2007-3050, slip op. at 111 (Fed. Cir. Feb. 14, 2008). Accordingly, we conclude that the Board's decision sustaining the first specification was supported by substantial evidence.

With respect to the fourth specification, the Board sustained a charge relating to a specific instance of misconduct. The agency alleged that on January 15, 2005, Mr. Lewis grabbed Ms. Julie Nguyen's arm and squeezed it to the point of causing bruising. According to the agency, Mr. Lewis did not let go until Ms. Nguyen kicked him. Mr. Lewis characterized the incident differently, testifying that he caught Ms. Nguyen's arm in his hand because she was motioning with her arms without realizing that he was walking by. He explained that Ms. Nguyen then kicked him while he was walking away. The administrative judge, however, rejected Mr. Lewis's explanation, finding it implausible that he would simply walk away and do nothing after being gratuitously kicked by one of his employees.

Mr. Lewis argues that the incident with Ms. Nguyen should be disregarded because Ms. Nguyen characterized the incident as "petty" in explaining why she did not report it at an earlier date. Even if Ms. Nguyen thought the incident to be "petty" at the time, however, the agency was entitled to consider it to be a serious matter that raised concerns about Mr. Lewis's ability to manage employees. Notwithstanding Mr. Lewis's argument that Ms. Nguyen was biased against him because Mr. Lewis eliminated her position, the administrative judge's reason for doubting Mr. Lewis's testimony provides a sufficient basis for crediting Ms. Nguyen's testimony, and we therefore affirm the Board's determination that the agency met its burden of proof. Because we affirm the Board's determination with respect to two of the factual specifications, we affirm the Board's decision to sustain the overall charge. See Burroughs, 918 F.2d at 172. Accordingly, we need not reach the other two specifications under charge seven, which are less clearly sustainable.

F

The last charge that the Board sustained against Mr. Lewis was that Mr. Lewis made false statements during an official investigation. The Board sustained that charge after finding that Mr. Lewis falsely stated in an affidavit that he never made derogatory remarks about his employees' weight. The Board made a factual determination that Mr. Lewis made such statements in connection with the charge regarding Mr. Lewis's alleged inappropriate personal and managerial conduct. The Board therefore found that Mr. Lewis's statement in his affidavit was made knowingly with the intention of misleading the agency. Because we have upheld the Board's findings with respect to

Mr. Lewis's remarks to subordinate employees, we sustain the administrative judge's finding that his denial of making those remarks was false.

III

Mr. Lewis argues that the Board erred in rejecting his affirmative defense based on "harmful error in the application of the agency's procedures in arriving at" its decision. See 5 U.S.C. § 7701(c)(2)(A). Mr. Lewis asserts that the agency's investigation into his alleged misconduct did not follow the guidelines established in an agency memorandum that was circulated in March 2003. That memorandum specified that investigators should avoid including personal opinions or conclusions in their reports, and should refrain from making disciplinary recommendations. The agency hired an outside contractor to investigate Mr. Lewis's misconduct, and the report that she prepared for the agency contained her personal opinions, conclusions, and recommendations for disciplinary action.

The Board rejected Mr. Lewis's argument for two reasons. First, it found that the March 2003 memorandum was not intended to have the effect of a law, rule, regulation, or other official policy. Rather, it was intended to provide guidance for agency investigators. The Board further found that the official policy of the Department of Agriculture with respect to investigations of employee misconduct, as described in the pertinent agency manual, did not prohibit investigators from including their opinions, conclusions, or recommendations. Moreover, the manager who wrote the March 2003 memorandum testified that he did not intend the memorandum to apply to outside investigators.

Second, the deciding official testified that he gave no consideration to the investigator's summary, which was the only portion of the report that contained the investigator's opinions. Instead, he stated that he relied solely on the evidence and affidavits contained in the report.

On appeal, Mr. Lewis argues that the agency's position that the March 2003 memorandum does not apply to outside investigators violates principles of equal protection. We reject that argument because the agency has maintained that the memorandum does not have the force of law, either for internal or outside investigators. Mr. Lewis also challenges the deciding official's testimony that he did not consider the investigator's opinion when he decided to remove Mr. Lewis. Mr. Lewis quotes statements in the notice of proposed removal and the removal letter that indicate that the official who proposed Mr. Lewis's removal and the deciding official both relied on the investigator's report. Those statements, however, are not inconsistent with the deciding official's testimony. The deciding official did not testify that he did not rely on the report. He merely stated that he did not rely on the investigator's recommendation as to penalty. We therefore find that the Board did not err in rejecting Mr. Lewis's affirmative defense.

IV

Mr. Lewis also complains that the agency and the Board engaged in ex parte communications because the agency submitted hearing transcripts to the Board without serving Mr. Lewis with any transcripts or transmission of the communication. Because the agency provided the Board with accurate copies of the hearing transcripts and engaged in no other communication, Mr. Lewis's argument is without merit.

V

Lastly, Mr. Lewis challenges the Board's determination that removal was an appropriate penalty. Because we uphold the Board's finding with respect to each of the charges against Mr. Lewis, and because removal was not a grossly disproportionate sanction for the charged misconduct, we sustain the Board's decision as to penalty.